Case number 235568, Frank McKenna v. Dillon Transportation LLC, or arguments not to exceed 15 minutes per side. Mr. Kopis, you may proceed for the appellate. Good afternoon, Mr. Kopis. Ladies and cord, it's a pleasure to be here, and I'll reserve five minutes. Very well. I'm taking the court's word that it's completely gone through all the filings and briefs and knows pretty much what's going on. Frankly, this is one of the more difficult situations I've ever been in. What I tried to do going through it last night, if you could, if I may, somehow narrowed down the real issue, if I could, to the best of my ability. And in that regard, it seems to me that on the appellate's brief on page 14, it meets head-on with the appellee's brief on page 14. It hits head-on with the appellate's reply brief on page 3. And I guess what that narrows down to is the authority, if you will, the power of the Secretary of Transportation to having passed that regulation, if you will, to where the preemption or the conditional privilege, whatever you want to call it, under the Federal Credit Reporting Act dictates whether or not under that regulation, in my case, the driver of this truck that had the accident could bring a defamation suit. And frankly, you concede that without the Federal regulation, your claim is barred by the Federal Fair Credit Reporting Act? Yes, Your Honor. And let me just say this, if I may. Frankly, I've gone over most of the cases I would review on these issues that have come out of the trial court level. And the only case I've really, maybe I've missed it, but the only one I've really come out has any, there appears to be a published opinion of any authority that comes out of the Third Circuit. And in that case, the party did comply with what that regulation provides, if you will, and the Third Circuit decision did cite that as being the authority for the defamation suit being brought. I stand on that same ground today. Do you, when I read the statute 508 and also the reg, it talks about an individual being under consideration for employment. And I don't, is your client under consideration for employment right now? In other words, isn't it premature to apply, this statute is not clear to me would even apply here, is that right? Well, what I look at there is the, is when the employee is under consideration for employment, they look to a reporting system, if you will, that provides information as to the history of that prospective employee. Yeah, we know what it does. Well, what I'm leading up to, if I may, is that the way I read that on the second one. Are you looking at 508? 508, yes, Your Honor. And frankly, please, the court, your interpretation, what you were seeing there, that is what I pretty much sort of hit me on the get-go. But when I look into it more completely, is that a person who has complied with such a request, what they're talking about there is that you have an obligation when you release an employee, you have an obligation to notify all other prospective employees, employers, if you will. And that's where the reporting, the DOC reports, if you will, come into existence. Right, I understand that it's going to happen, I suppose, if the individual is under consideration for employment. Are you saying that a person who has complied with such a request, which seems to me to refer back to number one, of specific request for records for a person under consideration, I don't know that there's been a request here either. I mean, I'm just not sure I read the statute. And I suppose the other thing that I'm a little bit confused about is who is the person that's complied with such request? Is it Higher Right or is it Dillon? If it's a middleman, if it's Higher Right is the one that's actually giving the information when it comes time, is that right? Well, for number one, you've got the actor here that's requesting. And that request goes to number two, that person. The reporting, the intermediate DOC reporting system is the connecting of the two. And there is case law that that transmission by the motor carrier here, where this motor carrier request is a review, that it's going through the system to the person who provided that review. So that person that provided that review, that's where the statement about the accident comes out under the Secretary of Transportation's regulation. Can I ask Judge Nalbandian's question again, which is, is your client, and I'm reading under consideration for employment, as a commercial motor vehicle carrier? Not today. Was he before today? No, not at that time. He was employed. Right, but after his employment, then the information was provided, correct, that you complain about. At any period after his employment up until today, has he been under consideration for employment as a commercial motor vehicle carrier? Well, let me... Well, it's a yes or no. Yes, I mean, he has approached, but he has not made any formal application, no, he's not. So he's not, you can't be under consideration? Well, correct, correct. He's not. Okay. He has not been... I mean, he did request the connecting factor out there that was going to take him over to the next level of employment. And when that connecting factor defamed him, he was told he could not present it. But he made verbal contact trying to get the work, but he could not do it because of what he held was not permitted. And so that's where he ended up, if you will, coming to my door. And so that's where we're at. We got that one case in the Third Circuit which says, in fact, that this type, if you are defamed, if you think of that nature, that the 508 and its succeeding regulation, which was empowered by 508, permits that party to make a defamation, if you will, suit for what happened. And I cite that on page three of my reply brief. I mean, this is a case, frankly, that begs this Court to enter something that can be looked at down the road to permit this from happening again. And, frankly, when I first heard about the accident, I was concerned because I have been out to Southern California a lot. And if that truck had continued on down I-15 for the next interchange and it made its tip, there would have been some people killed. So, I mean, that's just the background of this. I feel like there's some importance in trying to come up with something that will make the system work, if you will. All right. Any further questions? No, Judge. All right. Thank you. Thank you. You'll have your five-minute rebuttal. Good afternoon. Mr. Cox. May it please the Court. Good afternoon, Your Honors. My name is Jeffrey Cox, and I represent the Defendant Appellee Dillon Transportation, LLC. Your Honors, the Middle District of Tennessee made two rulings when it heard this case last year. And the first was that Appellant Frank McKenna's claims for libel and tortuous interference with business were preempted under the Fair Credit Reporting Act, or FCRA for short. And the second was that his motion to defer consideration of the then pending motion for summary judgment filed by the appellee and to conduct discovery under Rule 56D of the Federal Rules of Civil Procedure was denied. And for the reasons stated in the appellee's brief and the argument presented here today, we would argue that this Court should affirm the District Court's decision on both elements. The primary reason to affirm is that Chief Judge Crenshaw's ruling follows the Sixth Circuit's precedent concerning FCRA preemption of state tort claims and statutory claims set forth in Scott v. First Southern National Bank and the preceding cases. Before I continue, I would address a couple of the questions that was filed about the Court. With respect to what the Court asked concerning whether Appellant McKenna was under consideration for employment, the undisputed facts of the record show that nobody ever saw the DAC report except for Dillon that filed it. So you don't think 508 applies? With respect to – I don't see how it does. I mean – and also I'm not sure that that's – But if 508 doesn't apply, I suppose – so then you just get the preemption under the FCRA Act, right?  Is it – go ahead. No, I'm sorry, Your Honor. I didn't mean to – Is it possible that 508 kind of occupies the field for employment situations and therefore somebody who doesn't have immunity under 508 – so the specific – this is a specific statute that would cover this subject matter. Somebody is not exempted. Let's say Dillon is not exempted under this statute because they're not the actual provider in a third-party situation. Are they then on the hook, possibly, because they don't get liability in the statute but the statute occupies the field for this kind of claim so the Fair Credit Act wouldn't apply because the specific would govern the general? I now greatly understand what the Court is asking. And, Your Honor, in my view, in the appellee's view, these state tort claims are preempted both by Fair Credit Reporting Act, by 508, and by the FMCSR. They're completely preempted. And the reason for that is – Well, 508 has a carve-out if you knowingly furnish it, right? So in theory, if he could have – I don't know whether his pleading would get him that far. I don't know whether it would be remand. I don't know what it would be. But it's possible because there's a safety valve, in some sense, in the statute. There's not in the Fair Credit Reporting Act. So, you know, in some sense, he has to have the statute around because either it doesn't apply but, you know, doesn't give immunity to Dillon or he's got a knowingly argument and then he would be able to make the claim, right? Well, I think they waived that claim when they failed to amend their complaint and by – I think there was very good grounds that the Rule 56D motion was denied based on the fact that this wasn't raised until well after discovery closed. You're talking about a Dillon knowingly providing information to hire, right? Exactly, Your Honor. Essentially, what occurred was that we filed our motion and then subsequent to that, so then there was suddenly this 56D issue that was raised where they said, well, maybe, maybe there was some knowingly, maybe there was some other defamation. And the issue that came up was, well, maybe there were communications about this accident, which had nothing to do with the reason why Dillon had indicated in the DAC report that the appellant's safety record was unsatisfactory. That had everything to do with his driving record related to the ECM module from his truck. It has nothing to do with the accident, absolutely nothing. The accident had to be on the report because it was a recordable accident as defined by the FMCSRs. Now, with respect to 508, I would say that, Your Honor, that Dillon is required as a person if the court would look at 49 CFR 390.5, there was a greater definition of who a person is, and that means an individual, partnership, association, corporation, business, trucks, et cetera. So Dillon would fall under that. But the problem with the – Right, but what I'm saying is 508 is – 508 seems to be an imperfect fit for a case where there's a clearinghouse-like hire right. In other words, 508 seems worded in my mind to cover the case where I'm considering hiring somebody and you were the last employer, and I make a request to you to say, can you give me this information? So there is a request, and then you are the person who complies with such request, right, for an agent. But in this case, you have a middle man, right, hire right, which is for the convenience of the industry, I assume, that everybody wants this common entity to just report the information to them, and then they report the information out. A consumer reporting agency. Right. Well, and that seems to be a better fit for the Fair Credit Act than it does – even though it deals with employment, this statute is kind of an odd fit for the – unless hire right is someone who complies with such request. I mean, if there were a specific request made, then I suppose hire right would be a person who complies with that request, although Dillon would not necessarily be a person who complies with that request, even though it's their information. Well, as the Court knows, our primary argument was that this matter was preempted under the Fair Credit Reporting Act, and the District Court agreed, and based on the cases that have been promulgated by the Sixth Circuit, I do agree with the District Court's decision that it is preempted. With respect to 508, I confess that I don't have, you know, in-depth knowledge of the legislative history of it to give the Court greater coverage. Well, we're just looking at the text here. I mean, I don't know that there's any need to look at any legislative history. But, I mean, the only other thing I would ask you about, and I don't know if you've thought about this one either, but the reg 391.23 says, a motor carrier investigating information for an individual under consideration, and then the analog to 2 in the statute says, a person who has provided such information, as opposed to saying a person who has complied with such a request. Now, a person who's provided such information, that seems broader to me. Do you agree with that? A person who's, in other words, Dillon could be a provider of information, but not necessarily someone who complied with a specific request, if it's a situation where higher right is involved. Right. From my view of 390.23L, which I believe is what Your Honor is referring to, I think that it sort of kind of is supposed to look a lot like the Fair Credit Reporting Act text in that section, the preemption section. That's my understanding of it. So it covers, it preempts state law claims against the furnishers of information, which would be a Dillon, and then also the consumer reporting agencies, which would be a higher right. So the clearinghouse and the original. If the federal register relating to the 390.23 was appended to the appellant's brief and talks about how, you know, that they weren't overriding the FCRA and were trying to promulgate regulations in accordance with it, and that was the reason for that was because they wanted fulsome reporting of a driver's background, right? I mean, essentially, Dillon at this point has been dragged through years of litigation in the state and federal court for doing what was required to do under the federal regulations, which is the exact harm that the FMCSA was trying to prevent, and frankly that Congress was trying to prevent in the Fair Credit Reporting Act, and that this circuit has followed both in the Scott and the Lloyd cases, right? Because without that, if we open this up to just any state law claims that could be filed, we're not going to get fulsome reporting. What you're going to get is, hey, you know, did so-and-so work for you? And again, the dates of employment. You know, I mean, nobody's going to, it's going to create the very harm that the FMCSA. Well, are there other regs that cover what has to be provided? I thought there were. The FMCSA, well, that's found in 391.23. It specifically discusses what needs to be covered. Now, as they talk about this accident, that accident also was required to be in the report by the same regulation, 390.23, and it also is covered by under recordable accidents found in 390, 49 CFR 390, which has a very broad definition of what accidents are. So I just wanted to address the court's statement there. But for, so the case that we're discussing here arises from the mandatory consumer report that Dillon filed on the appellant, Frank McKenna, after his termination as a truck driver in February 2017. Dillon is a federally licensed interstate motor carrier, and by virtue of an authority issued to it by the Federal Motor Carrier Safety Administration, the FMCSA for short. The FMCSA, as a regulated carrier, Dillon must comply with the Federal Motor Carrier Safety Regulations, or the FMCSRs for short. And 49 CFR 391.23 requires motor carriers that may want to hire a driver, perform certain investigations and inquiries on said driver. The former carrier employs to provide the information, and many carriers comply with that request by filing a DAC report, this dial-a-check report that's called a DAC report. And that's filed with the Consumer Reporting Agency higher rights, and section 391.23 contains the information that must be produced on the former driver. After the termination of appellant McKenna, Dillon filed this confidential DAC report and indicated under a heading titled work record that Mr. McKenna had an unsatisfactory safety record. We know the fact. Okay. So one of the things that's also notable is that the appellant had certain rights, both under the FCRA and the FMCSRs, to challenge the DAC report should he have felt that Dillon had reported something inaccurate. And the undisputed facts show that he did not avail himself of those remedies. He did not file a rebuttal statement, nor did he challenge the report with higher right. With respect to the district court, in showing the Sixth Circuit's long-standing precedent that state law claims against furnishers reporting consumer information are preempted by the FCRA, the district court cited the cases of Scott v. First Southern National Bank. And the court also referenced earlier. I take it there's no evidence that higher right furnished the information that came from Dillon furnished it to anybody else? No, sir. There was a subpoena filed on higher right, and they produced information which was produced in the district court. And so the undisputed record shows that no one ever looked at the report apart from Dillon and the appellant. Nobody at higher right looked at it? Well, I can't say. Is it a compute? Mechanically, what happens? You file the report, higher right gets it, and then stores it in their database until somebody requests it? I understand, Your Honor, that the carrier has an account with higher right and logs in with some type of password arrangement and inputs the information. I'm not sure anybody actually physically ever looked at it at higher right. Now, this report's just not out there for the general public to see. The driver has to fill out a consent form, also part of the regulations in the Fair Credit Reporting Act, for potential employers to see it. So higher right's information showed that nobody looked at it, nobody ever received a request for the report, which was kind of, to the judge, to Your Honor's point before about was he actually under consideration for employment. We would note that the principle that this circuit has set, that state law claims are preempted under the FCRA, is longstanding and is being followed by courts, most recently in the Middle District of Tennessee with Judge Traeger in a 2023 case. I think counsel admitted that it's preempted unless the federal law somehow supersedes it or controls it here. Yes, Your Honor. And with the federal law, I would say that one of the sections that it was referred to also refers to the Surface Transportation Board, which has a very specific jurisdiction, which is to cover rail policy. The final thing that I would note here, kind of a summary, would be the Rule 56D motion. Those motions, as this court well knows, are here under abusive discretion standard. And there's a five-factor test to it. That wasn't contained in the appellant's brief, and the appellee would posit that's because they don't meet any of the five factors that are present, and that the court had a very good rationale under cases like Bowers v. Ophthalmology Group and FTC, EMA, Nationwide, Inc., to deny the Rule 56D motion. There had been an eight-month discovery period. The appellant had ample time to pursue his claims in discovery, and that hadn't occurred. And so, Your Honors, for the reasons set forth in our brief and what we presented here, we would ask that this court affirm both the dismissal of preemption and under Rule 56D. Any further questions? Thank you. I thank the court. Thank you. Thank you, Mr. Cox. Five minutes rebuttal. Please, Your Court. What's in my head, again, the case law and whatever I've come across is that the report that they made, if you will, about the accident on my client's records, if you will, whenever they gave it to Allwright, then they delivered it constructively, if you will. It was constructively delivered to all other potential employers. So was he under consideration? At that point in time, he would be under consideration with every employer based on what was on that record. So, for me, there's what you call a constructive delivery of that notice, if you will, to the other parties. But no other employer had access to the report? No, no other employer had. The only way you can access it is through the consent of my client, well, of that employee. Sir? Correct. No one requested the report? Correct. So what evidence is there that he's under consideration? What I'm just saying was that the first step of being under consideration had taken place, and you could not reverse that step. What evidence is there, I'm curious, that there was any publication for purposes of the defamation claim? Are you saying the publication was when Dillon sent the information to HireRight? I believe there was publication whenever they made a report to the insurance company that my driver was at fault of an accident. That's what I believe. I mean, I filed a request. I don't think that's what the complaint says right now. No, well, it's not what it says right now, but in my discovery when I got discovery, if you will, from the other side, I could see that they had received a sizable insurance check from the insurance company, and I had represented commercial carriers in the past on insurance claims, which led me to believe that they had no knowledge of what I discovered in discovery, that my client was not responsible for the accident. And that's when I decided to try to get information as to what they sent to the insurance carrier at that moment. And when they did not reply to my discovery, I filed a motion to compel for that. And that's also, I believe, one of my issues in the briefs that I raised to the court, and the court denied that. Well, that's your 56D request, right? That you needed more discovery?  Where you could answer the summary judgment? Right, correct. And let me say this. I was anxious to get this thing done. And so what I did, I went ahead and I tried to file with the court everything that I had to respond to the summary judgment motion, and I filed a motion asking the court to stay the hearing until I got that discovery. And so you're correct, and I guess in that regard, that would have been that type of motion. Again, in 508, it talks about that the person is normally furnishing the false information, that this limitation up here doesn't apply on 508. So I think it was enough there for the Secretary of Transportation to create the regulation, which she did. I can't remember who it was at the time. The only thing I can say in that regard is that when I first entered practice, I was an attorney, if you will, for a federal agency. And these federal registers, you see them all the time. They come across your desk. And when I saw the register that the Secretary complied on this regulation, I'd never seen any that was so voluminous. It contacted so many public interest people. It put everything you had into it to create that regulation. I think it's a good regulation. It should be enforced just like the Third Circuit did recently. Thank you. Any further questions? All right. Thank you. Case will be submitted.